*In re* MARRIAGE OF UTE J. CHRISTIANSON, Petitioner-Appellant, and JACK F. CHRISTIANSON, Respondent-Appellee.

Third District    No. 79-793

Opinion filed September 26, 1980.—Supplemental opinion filed on denial of rehearing October 31, 1980.

Larry T. Frantz, of Peoria, for appellant.

Franklin L. Renner, of Bartley, Fraser, Parkhurst, Hession & Renner, of Peoria, for appellee.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Ute J. Christianson, petitioner, married respondent, Jack F. Christianson, on March 17, 1955. Six children were born of the marriage ranging in ages, as of January 1, 1980, from 22 to 12. On September 21, 1972, a decree of divorce was entered in the cause providing that petitioner was to receive custody of the six minor children; that respondent was to pay $120 per week child support for six months and then $125 per week; that respondent was to provide all reasonable medical, dental, hospitalization and pharmaceutical expenses for the minor children; that respondent was to provide for the education of the minor children through high school and to assist, where possible, with their college education; that respondent was to have two parcels of real property as his separate property with petitioner having the right to reside in one of those residences, as long as she remained unmarried, at no cost to her whatsoever, and that the residence would be maintained in a reasonable condition.

On June 15, 1976, petitioner filed a petition for modification of the decree of divorce, a petition for rule to show cause, and a petition for the entry of a money judgment alleging that respondent had failed to pay for medical and dental expenses; that the children's needs had increased substantially; that the income of respondent had increased substantially; that payments on the premises at 223 N. Kickapoo Terrace were in arrears and foreclosure proceedings were possible; that the residence was in disrepair and that petitioner had no funds to make repairs; and that the prior decree should be modified. The petitions for rule to show cause and for money judgment also alleged that respondent was in arrears for child support and prayed for judgment in the amount of the arrearage.

Later a motion for leave to file amended petitions was granted. The amended petitions contained essentially the same allegations with additional requests for immediate repairs to the residence to be paid for by the respondent, for posting of security for future payments, and for attorney's fees. Respondent then filed a motion for modification of decree requesting a reduction in support and filed his answer to the petition for modification of decree, an answer to amended petition for rule to show cause, an answer to petition for attorney's fees, and a motion for rule to show cause.

On July 1, 1977, an order was entered placing the telephones at the residence of petitioner into her name, relieving respondent from payment of long-distance phone charges, and requiring respondent to pay the monthly charge for one phone, and reserving all other issues for further hearing. On December 7, 1977, a judgment order was entered in favor of petitioner and against respondent in the sum of $10,944.15, but on December 13, 1977, respondent filed a post-trial motion alleging he had further evidence to present.

Thereafter, several hearings were held at which additional evidence was adduced. From the date of the original decree until July 1976, no child-support payments were made to the clerk of the circuit court, but instead, some payments were made by depositing them directly into petitioner's checking account. These deposits were usually by check, and on several occasions these checks were returned for insufficient funds. There was conflicting testimony about funds received as loans on life insurance policies on the lives of the minor children. Respondent testified that these loans were, by agreement, a means of paying child support. Petitioner denied such an agreement, admitting that checks were received by her, but stating that she either signed the checks and returned them to the respondent or cashed them in his presence and gave him the money, receiving back small amounts on one or two occasions.

Petitioner also testified that on several occasions she had paid utility bills when shut-offs were threatened because respondent had not paid the bills, and checks for payment of those bills were introduced into evidence. The same was true for medical and dental expenses which were paid by petitioner or were still due and owing. Evidence of school expenses paid by petitioner, for which she was not reimbursed by respondent, was also submitted.

On July 17, 1979, an order was entered finding that respondent was delinquent in child support as of December 13, 1977, in the amount of $2,100, that both parties were in contempt of the spirit of the original decree, and finding that there had been substantial changes requiring modification. The order then provided that respondent pay to petitioner the arrearage of $2,100; that respondent pay child support of $100 per week commencing July 1, 1979, to be reduced by $25 per week as each

child becomes emancipated; and that child support terminate upon emancipation of the youngest child. The order further provided that respondent order all work done on petitioner's residence; that he be responsible for all dental, medical, optical and medicinal bills required for the benefit of the minor children not paid for by insurance; that he pay real estate taxes and $125 per month as a contribution towards utility costs, with the latter payments to cease upon remarriage of the petitioner or upon emancipation of the youngest child, whichever occurs first; that petitioner have exclusive possession of the residence at 223 Kickapoo Terrace until the youngest child is emancipated or she remarries, whichever occurs first; that petitioner be excused from executing a quitclaim deed to the property until all the obligations of respondent are met, unless required by a lending institution for refinancing purposes; that respondent furnish copies of all life insurance policies on his life in favor of the minor children and copies of all policies on the lives of the minor children of the parties; that both parties were enjoined from harassing each other directly or indirectly through their offspring and from harassing the minor children with respect to visitation rights. The order vacated the judgment of December 7, 1977, and awarded alimony in gross of $4,800 to petitioner to be paid in 24 equal installments commencing July 15, 1979. The modification order also awarded $2,500 as petitioner's attorney's fees to be paid within one year from the date of the order, and reserved all contempt sanctions.

On July 26, 1979, an order *nunc pro tunc* was entered providing that respondent had the duty of repair of the residence and could undertake repairs himself or could hire workmen under his direction. This order also provided for a change in the method of utility payments. No motion or notice regarding the order *nunc pro tunc* was filed or served.

From these orders the petitioner has appealed, raising numerous issues, including whether the trial court erred in the computation of child support arrearages; whether the reduction of child-support payments was erroneous; whether the court order improperly provides for future, automatic, pro rata reductions in child support; whether the court improperly modified the property settlement provisions of the original decree; whether the court erred by refusing to order respondent to reimburse petitioner for certain expenditures; whether the court erred in issuing its *nunc pro tunc* order; whether the limitation on payment of installments of alimony in gross was improper; whether the court improperly awarded alimony in gross instead of periodic alimony; whether the court erred by failing to order immediate repairs to petitioner's residence and by allowing respondent to make the repairs; and whether the vacation of the December 7, 1977, order on arrearages was improper.

Addressing the issues concerning child support first, we find that the

motion to vacate the December 7, 1977, judgment of child support arrearages was timely filed, and we note that, ordinarily, the granting or denial of such a motion rests with the sound discretion of the trial court. (Ill. Rev. Stat. 1979, ch. 110, par. 68.3; *Freeman v. Augustine's Inc.* (1977), 46 Ill. App. 3d 230, 360 N.E.2d 1245.) Petitioner argues that the court's reasons for granting the motion should have been stated for the record. Considering the extent of the evidence presented at subsequent hearings and that the motion informed the court that additional evidence existed which would demonstrate respondent's outstanding indebtedness to be only $2,100, we find no abuse of discretion on the part of the trial court in vacating the December 7, 1977, judgment order.

■■■ Concerning the amount of arrearages, petitioner contends that the trial court erred by reducing the amount of past due installments. Had this occurred, it would, of course, have been error. (Ill. Rev. Stat. 1979, ch. 40, par. 510(a); *Jozwick v. Jozwick* (1979), 72 Ill. App. 3d 17, 390 N.E.2d 488.) The facts in this case, however, indicate the court did not reduce the amount of past due installments, but merely determined the amount which was actually past due. Before the court was evidence that respondent deposited some checks directly into petitioner's checking account. There was also conflicting testimony concerning the distribution of funds received on life insurance policies on the lives of the minor children, and whether these distributions were payments for support pursuant to an oral agreement by the parties. There was also evidence of a bank loan deposited into petitioner's account, payments to a grocery store, payments to a department store and payments made to the circuit clerk of Peoria County.

■■■ Based on this evidence the trial court could reasonably resolve the conflict in the evidence in favor of respondent, and such a determination was not contrary to the manifest weight of the evidence. Similarly, the court's modification of child support was not reversible error. It is true that a reduction is proper only if based on a substantial change in circumstances. (Ill. Rev. Stat. 1979, ch. 40, par. 510(a).) The fact that three of the six children had attained the age of majority at the time of the modification order was such a substantial change in circumstances. As a result, we cannot say that the court abused its discretion in reducing the amount of weekly child support payments from $125 to $100.

Petitioner also contends that it was improper for the trial court to include in the modification order a provision requiring the automatic pro-rata reduction of child-support payments upon the emancipation of each child in the future. Since respondent agrees with petitioner on this point, that portion of the modification order will be vacated.

■■ In a related contention, petitioner alleges that it was error for the trial court to refuse to order respondent to reimburse petitioner for certain

medical, educational and utility expenses. After an examination of the record and the exhibits therein, we find petitioner's argument to be without merit. These expenses are in the nature of child support, and the court could reasonably find from the evidence presented that respondent owed no more than $2,100 to petitioner for child support, these expenses included. Such a finding is not against the manifest weight of the evidence.

Next we consider petitioner's contentions concerning her residence. First, she argues that the court, by modifying the provisions allowing her to remain in the family residence, improperly modified a property settlement provision. Respondent, on the other hand, argues that the provision was properly modified since petitioner was allowed to remain in the house as a form of maintenance. Maintenance provisions are modifiable upon a showing of a substantial change in circumstances, while property settlement provisions are not. Ill. Rev. Stat. 1979, ch. 40, par. 510(a).

In the divorce decree, respondent was awarded title to the residence and another property, and petitioner was required to quitclaim to respondent any interest she might have in said property. However, petitioner was given the right to remain in the residence, for so long as she remains unmarried, at no cost whatsoever. Upon modification, petitioner's exclusive right to remain in the residence would terminate upon her remarriage or upon the emancipation of the youngest child, whichever occurred first.

A similar provision was found to be a form of property settlement under prior law (*Chamberlin v. Chamberlin* (1969), 119 Ill. App. 2d 295, 256 N.E.2d 159), and we believe under the new act, the awarding of exclusive possession of the residence to petitioner in the case at bar is also in the nature of a property settlement. This award is part of the paragraph awarding two parcels of real property, both previously owned in joint tenancy, to the respondent. We think it apparent that, in return for quitclaiming to respondent all her interests in the property, petitioner would be allowed to remain in the premises unless she remarried. This conclusion is buttressed by the fact that a different paragraph of the decree provided for monetary payments to petitioner of up to $1,000 each year depending on respondent's level of income. We agree, therefore, with petitioner that the trial court improperly modified a property settlement provision of the original divorce decree.

■■■ Petitioner also challenges the propriety of that portion of the *nunc pro tunc* order which purports to amend the modification order so as to allow respondent to repair petitioner's residence himself or to hire the work done. The modification order required the respondent to hire all the work done. "[T]he purpose of a *nunc pro tunc* order is limited to entering

into the record something which was actually done, and it may not be used to supply omitted judicial action, to correct judicial error, or to cure a jurisdictional defect." (*Spears v. Spears* (1977), 52 Ill. App. 3d 695, 698, 367 N.E.2d 1004, 1007.) Respondent admits that the handwritten ruling of the trial court contains a reference to neither the portion stricken from the modification order nor the portion purportedly added by the *nunc pro tunc* order. He also admits that the clarification in the *nunc pro tunc* order is the same as "omitted judicial action" or "judicial error" referred to in *Spears*. As a result, paragraph 1 of the *nunc pro tunc* order of July 26, 1979, must be held to be without force or effect.

The next issue to be considered is whether the trial court erred by failing to order the repairs to be made immediately. The court did not rule on the condition of the house, but did rule that, if repairs are made, respondent shall hire the work done and neither party is to interfere with the workmen.

A review of the pleadings indicates that only in her amended petition for rule to show cause, filed November 30, 1976, does petitioner mention that the premises are in dire need of repairs, and she asks that respondent pay for all necessary repairs. At one point in the proceedings, the trial judge examined the premises and noted that repairs were necessary. Since the basis of petitioner's allegation of error is that the trial court did not grant her petition to have respondent show cause why he should not be held in contempt of court, and since there was evidence that petitioner harassed respondent when he was present on the premises, we find that the trial court's refusal to grant the petition was not erroneous.

The final issue to be considered is the propriety of the maintenance award. Petitioner argues, first, that the trial court erred by providing that the payments of "alimony in gross" could be discontinued if petitioner remarries before June 15, 1981, and secondly, that the award should not have been limited to $4,800 in 24 equal monthly installments.

While the trial court labeled this award alimony in gross, the proper description under the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 101 *et seq.*) is now "maintenance." Under the appropriate provisions of the Act:

"(b) The maintenance order shall be in such amounts and for such periods of time as the court deems just, without regard to marital misconduct, after consideration of all relevant factors, including:

(1) the financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(2) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) the standard of living established during the marriage;

(4) the duration of the marriage;

(5) the age and the physical and emotional condition of both parties; and

(6) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance." Ill. Rev. Stat. 1979, ch. 40, par. 504(b).

The order of the trial court specifically states that the purpose of the award is to enable the petitioner to learn a marketable skill. Evidence relevant to all the statutory factors was before the court. The awarding of maintenance is within the sound discretion of the trial court, and the award will not be disturbed unless an abuse of discretion is demonstrated or the award is shown to be against the manifest weight of the evidence. (*Schuppe v. Schuppe* (1979), 69 Ill. App. 3d 200, 387 N.E.2d 346.) The record here supports the award.

As to the limitation on the award, we note not only that the Marriage and Dissolution of Marriage Act does not preclude an award of both alimony in gross and periodic alimony (*Schuppe v. Schuppe*), but also that the distinction between alimony in gross and periodic alimony has been eliminated by a merger of those concepts into the term "maintenance" as it is statutorily defined. The limitation imposed here is reasonable where the purpose is to allow petitioner to learn work skills, and in the event she remarries, support from a new husband would obviate the need for the maintenance.

For the foregoing reasons, the order of the Circuit Court of Peoria County is affirmed as modified herein.

Affirmed as modified.

BARRY and SCOTT, JJ., concur.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

Mr. JUSTICE STENGEL delivered the opinion of the court:

Following the filing of our original opinion, plaintiff has filed a petition for rehearing in this court, urging that we clarify our opinion in regard to whether the respondent is required to make all utility

payments, as was required by the original decree, or merely contribute $125 per month, pursuant to the modified decree. Since it has been determined that the provision of the original decree allowing the petitioner to remain in possession of the residence at no cost to herself until she remarried was part of a property settlement and, therefore, unmodifiable, it seems clear that the portion of the order of the trial court setting the respondent's contribution for utilities at $125 must also be stricken. Petition for rehearing is denied.

BARRY and SCOTT, JJ., concur.