576

*In re* MARRIAGE OF SOLOMON MUNFORD, Petitioner-Appellant, and JESSYE MUNFORD, Respondent-Appellee.

First District (5th Division) No. 87—1474

Opinion filed July 29, 1988.

Alan J. Mandel, of Isham, Lincoln & Beale, of Chicago, for appellant.

Beermann, Swerdlove, Woloshin, Barezky & Berkson, of Chicago (Debra A. DiMaggio, of counsel), for appellee.

JUSTICE MURRAY delivered the opinion of the court:

Petitioner Solomon Munford appeals from an order of the circuit court of Cook County increasing his maintenance obligation to respondent Jessye Munford from $300 to $750 per month for a one-year period. On appeal, Solomon argues that the trial court abused its discretion in increasing his maintenance obligation because no change in the parties' circumstances was established at trial and the court improperly considered his pension and retirement income as a basis for his ability to pay the increased maintenance. For the reasons set forth below, we reverse.

On May 8, 1981, the parties' marriage was dissolved. Solomon was 60 years old and Jessye was 64. No children were born to the parties. A property settlement agreement executed by the parties was incorporated into the dissolution judgment. Pursuant to the judgment, Solomon was ordered to pay Jessye $300 per month as maintenance. Jessye also was awarded the parties' financial assets in the amount of $29,500, which consisted of stocks, bonds, debentures and a certificate of deposit, as well as the parties' "Vacation Key Plan" in Lake Geneva, Wisconsin, and all the furniture, fixtures and furnishings contained in the marital home. In exchange, Jessye agreed to pay Solomon $3,500 for his interest in their joint property and waived *"any and all claims* that she may have in and to Solomon's pension and/or profit sharings plans" (hereafter retirement benefits). (Emphasis added.)

On March 11, 1986, Solomon filed a petition to terminate maintenance. On April 7, Jessye filed a petition to modify the dissolution judgment to increase her monthly maintenance, claiming a substantial change in the parties' circumstances, *i.e.,* Jessye alleged that her health was failing, she had increased expenses, medical and otherwise, and she was unable to work, whereas Solomon's income had increased and he therefore was able to pay an additional sum in maintenance.

During the hearings on the parties' petitions, it was established

that Solomon's gross annual income in 1980, one year prior to the dissolution of the parties' marriage, was $17,066 and in 1985, one year prior to the filing of the petition to modify the dissolution judg-. ment, $3,128.72 ($37,544.64 annually), which consisted of approximately $15,000 in ordinary income and $22,553.28 in retirement benefits. On the other hand, Jessye testified that her health "is failing" (she suffers from memory loss, glaucoma, high blood pressure, diabetes, bunions and arthritis) and has, as a result, incurred higher medical expenses and other attendant expenses thereto. In rendering its judgment, the court expressly found that "there was no medical evidence, competent medical evidence as to the condition of Jessye Munford" and that "there was not a real explanation as to what medical costs are being paid by [Jessye]" as opposed to Medicare. Nonetheless, the court awarded Jessye an increase in maintenance for one year, to be reviewed at a later time, based on its determination that Jessye was equitably entitled to "some" additional support out of the income derived by Solomon from his retirement benefits pursuant to the following rationale:

"As to the pension issue, I can see from the decree that Jessye got approximately, well, nearly thirty thousand dollars, ($30,000.00) of assets that we can see from her affidavit, which has not been contested as to that issue, this is two hundred and two dollars, ($202.00) per month, whereas the asset of the pension that Mr., or rather that Solomon received at this point is giving him approximately, almost two thousand dollars, ($2,000.00) a month, it's a huge difference and *I don't see from the case that you cited me that that should cause me to disregard the income that's been generated from that asset, certainly that's different than here being given a distribution of that at the time of the decree* ***.

*** [A]s I look at the decree, it would certainly make sense because she is getting only, if she only got thirty thousand dollars, ($30,000.00) worth of assets, I don't think it tak_s much common sense the value of these pensions far, far, far exceed that, so it would not make sense to me that she would get that small amount of asset without there being some consideration later that *she would get the benefit of some, of that income from that asset.*" (Emphasis added.)

Accordingly, on October 3, the court entered an order denying Solomon's petition to terminate maintenance and granting Jessye's petition, increasing Solomon's maintenance obligation from $300 to $750 per month for a one-year period. Solomon now appeals only from

the order increasing his maintenance payments.

 Dispositive of this appeal is resolution of whether, as Solomon argues, the ordered increase in maintenance was actually a modification of the parties' property settlement agreement rather than a modification of the maintenance provision of the dissolution judgment based on a substantial change in circumstances. While maintenance provisions are modifiable upon a showing of a substantial change in circumstances, property settlement provisions are not (*In re Marriage of Christianson* (1980), 89 Ill. App. 3d 167, 411 N.E.2d 519; see also Ill. Rev. Stat. 1985, ch. 40, par. 510(a)), unless a court finds the existence of conditions that justify the reopening of a judgment under the laws of this State (*In re Marriage of Redmer* (1982), 111 Ill. App. 3d 317, 443 N.E.2d 1075). Reopening of a judgment is proper and a property settlement agreement will be set aside where the execution of the settlement agreement was accompanied by some element of fraud, coercion or misrepresentation. (*Thompson v. Thompson* (1980), 91 Ill. App. 3d 943, 415 N.E.2d 28.) It is also well settled "that *pension rights* whether matured, vested, contributory or noncontributory, *are property* under section 503 of the Act (Ill. Rev. Stat. 1983, ch. 40, par. 503)." (Emphasis added.) *In re Marriage of Rubinstein* (1986), 145 Ill. App. 3d 31, 495 N.E.2d 659.

Here, the trial court held that Jessye's waiver of any interest in Solomon's "pension and/or profit sharing plans" was not also a waiver of the income generated from the plans. We need not address this finding in detail because Jessye does not dispute her waiver of either but instead contends that the ordered maintenance was not an award based on Solomon's pension income, *i.e.*:

> "*The Husband was not ordered to pay Wife an increase in maintenance directly or indirectly from his pension benefits.* Husband's pension benefits are not affected by the trial court's award since he can fully satisfy the total maintenance awarded to Wife from his *earned income.* Husband is not required to share his pension benefits with Wife; he need never give her one cent of his pension benefits. Rather, Husband is free to apply his pension benefits toward his sole support, which in turn enables him to contribute a greater share of his *earned income* toward Wife's maintenance." (Emphasis added.)

 We find Jessye's argument without merit. The trial court specifically stated that "the income generated from Petitioner's Pension Plan was not waived by the Respondent," it was unpersuaded

that it "should.disregard the *income that's been generated from that asset [the pension plan]*," and that "it would not make sense *** that she [Jessye] would [not] get the benefit of some, *of that income from that asset.*" (Emphasis added.) Clearly the court awarded Jessye increased maintenance out of and based upon income received by Solomon from his retirement benefits, rather than his "earned income" as argued by Jessye. Accordingly, not only does Jessye's argument on this point fail, but we also observe that the trial court improperly rewrote and modified the parties' property settlement agreement where Jessye had not alleged, nor was there any evidence of, any intent by the parties to distinguish between waiver of the plans and the income derived therefrom or that the execution of the parties' agreement was accompanied by fraud, coercion or misrepresentation on the part of Solomon. We therefore hold that the trial court's findings were against the manifest weight of the evidence. See *Fields v. Fields* (1977), 54 Ill. App. 3d 400, 369 N.E.2d 586.

We similarly reject Jessye's argument that the increase in maintenance was nonetheless properly based on a substantial change in the parties' circumstances. "Generally, maintenance is [initially] awarded based upon the needs of the one spouse in relation to the other spouse's ability to pay and is determined from the standpoint of the manner in which the parties have been accustomed to live." (*In re Marriage of Parello* (1980), 87 Ill. App. 3d 926, 934, 409 N.E.2d 461.) In seeking modification of a dissolution judgment to increase a maintenance award, the party seeking it must show that the former spouse's *ability to pay additional maintenance has increased* and that her *needs for maintenance have increased.* (*Dunn v. Dunn* (1979), 71 Ill. App. 3d 649, 390 N.E.2d 136.) Here, Jessye has failed to establish either. The record reveals that Solomon's "earned income" was actually $2,000 less between the time of the dissolution judgment and the time when the court considered Jessye's petition for an increase in maintenance ($17,066—1980, $15,000—1985). Jessye stated that generally all of her expenses had increased (*i.e.,* for clothing, gifts, donations and cosmetics), but only her alleged medical expenses were questioned by the court and it expressly found that she failed to present competent medical evidence as to either the state of her health or the expenses incurred as a result thereof. Accordingly, we hold that because Jessye failed to show that Solomon had an increased ability to pay additional maintenance to her out of his earned income and there was insufficient evidence to support a change in her needs/expenses, an in-

crease in maintenance could not properly be based on "a substantial change in circumstances" theory.

In light of the foregoing, the judgment of the circuit court of Cook County is therefore reversed.

Reversed.

SULLIVAN and PINCHAM, JJ., concur.