*In re* MARRIAGE OF LYMAN C. TIEMAN, Petitioner-Appellee, and AN-TOINETTE TIEMAN, Respondent-Appellant.

Third District   No. 3—91—0958

Opinion filed December 3, 1992.

848

Ross B. Shugan and Robert J. Schmit, both of LeVine, Wittenberg & Shugan, of Homewood (Howard M. LeVine, of counsel), for appellant.

Troha, Troha & Bednarek, of Joliet (Theodore J. Bednarek, of counsel), for appellee.

PRESIDING JUSTICE BARRY delivers the opinion of the court:

Antoinette Tieman appeals from an order entered in the circuit court of Will County denying her petition for modification of child support and granting two petitions of Lyman C. Tieman in which he sought to terminate his obligation to pay a portion of the college expenses of the parties' oldest son Chris and to reduce by one-third the amount of life insurance he was required to maintain for the benefit of his three sons.

Three issues are raised on appeal: (1) Did the court err in reducing Lyman's life insurance obligation from $150,000 to $100,000? (2) Did the trial court abuse its discretion in denying Antoinette's motion for continuance as to her supplemental petition for modification for purposes of discovery? (3) Did the trial court err or abuse its discretion in refusing to allow Antoinette to withdraw her supplemental petition for modification of child support? We affirm the rulings of the trial court.

Lyman obtained a divorce from Antoinette in 1984. The order entered following trial awarded custody of the three sons jointly to Lyman and Antoinette with Lyman to have physical custody and to be solely responsible for their support. The trial court divided the assets and liabilities of the parties, made provision for pending tax liabilities, and also provided:

"The term life insurance on the life of the Plaintiff [Lyman] in the amount of $150,000 shall be kept and maintained by the Plaintiff with the children as beneficiaries until the youngest attains the age of eighteen years."

Disagreements over visitation and custody prompted ongoing court appearances beginning in July of 1987. These disputes ended with an agreed order entered on May 15, 1989, transferring physical custody of the boys to Antoinette, requiring Lyman to pay $350-per-week child support for the two minor children and one-half of actual college expenses (within certain limits). Antoinette is to pay one-

fourth of the college expenses and the child is to pay one-fourth unless the child is unable to pay in which case Lyman's share will be two-thirds and Antoinette's share one-third. The liability for college expenses is conditioned upon the son's attendance full time in good standing during four consecutive years of fall and spring semesters. The 1989 agreed order also contained provisions for medical, dental and orthodontic expenses.

On October 22, 1990, after notice, Antoinette presented to the trial court a petition for rule to show cause and for modification. Lyman was given 28 days to respond, and all pending matters were set for hearing on December 3, 1990. The first of many continuances was agreed to on December 3, and thereafter Lyman filed a motion to strike Antoinette's petition on the grounds that it inappropriately combined several claims and requests for relief. Three additional continuances were granted until, on March 20, 1991, the court ordered all pending matters to be heard on May 20, 1991, with no further continuances.

In April Lyman filed two petitions: one to terminate his college support obligation for the oldest son Chris and the other to reduce the life insurance benefit on a *pro rata* basis. On May 28, 1991, when Antoinette's attorney failed to appear, the trial court entered another order setting the matter for June 6 with the notation, "Both parties notified that there will be no continuances."

On June 6, Antoinette's attorney obtained a change of venue from the judge first assigned to hear the case, and then, appearing before Judge Angelo Pistilli, he presented two "supplemental petitions," one for a rule to show cause and the other for modification of child support. He stated that the underlying petition filed by Antoinette was being withdrawn (in fact, the October 1990 petition had never been filed with the circuit clerk) and that he needed time to do some discovery as to the supplemental petition for modification, particularly to obtain Lyman's 1990 income tax return. Antoinette maintained that the supplemental petition seeking an increase in child support contained new matters not contained in the original petition for modification, but Lyman argued that the issues were exactly the same and that she has had ample time for discovery since October of 1990. The trial court denied the motion for continuance and stated that the pending petitions would be heard one at a time.

The court first heard Lyman's petition to terminate college support for Chris. Chris testified that he was 21 years old, that he had attended Arizona State in 1987, Joliet Junior College in 1988, Augustana College in 1989, and Loyola University in 1990. He admitted

that he was now only a second semester sophomore, that he had withdrawn from Arizona State during the first semester, that he had attended Joliet Junior College for three semesters, that he had withdrawn from Augustana during his second semester there, and that he had left Loyola in February of 1991 to go to California to visit a 16-year-old girl. The trial court found that Chris had violated the conditions entitling him to college support and granted Lyman's petition to terminate all support for Chris. This ruling is not challenged on appeal.

Next the court considered Lyman's petition for a reduction of insurance benefits. The 1984 judgment of dissolution required Lyman to maintain $150,000 in insurance with his three sons as beneficiaries until the youngest son reached the age of 18. Lyman sought to reduce the amount of insurance to $100,000, reflecting the *pro rata* decrease of his child support obligation now that his duty to support Chris was terminated. Lyman testified that his policy was only for $100,000 and that he had erroneously thought it was $150,000 at the time of the 1984 order. He further testified that he had always understood that one-third of his insurance liability would be abated as each child became an adult since the purpose of the insurance was to guarantee his support payments. The trial court rejected Antoinette's argument that the agreed order was a clear and unambiguous contract between the parties and ordered the insurance reduced to $100,000.

At this stage of the hearing, Antoinette's attorney requested that her supplemental petitions be set for hearing at another time so he could attend an afternoon hearing in the Chicago downtown Loop. When the court refused, Antoinette's attorney said he would withdraw the petitions and refile them later since the hearing on them had not started. The trial court stated, "Your motion to withdraw is denied. *** I will not let you go."

With Antoinette's attorney participating, the court then began to hear her supplemental petition for a rule to show cause alleging in count I that Lyman was in arrears as to child support in the amount of $1,310. Lyman admitted the arrearage and agreed to pay in full by the following Monday. As to count II, Antoinette sought payment of $2,000 owed to Loyola by Chris for the semester he failed to complete in the spring of 1991. The testimony indicated that Chris wanted to attend Loyola in the fall of 1991, but he would not be admitted unless his previous bill was paid. The $2,000 amount at issue represented Lyman's portion of the unpaid bill. The trial court found that Chris failed to mitigate damages when he left Loyola in February without

requesting a refund and that Lyman was liable only for expenses relating to full-time attendance. The petition was denied as to count II.

Next the court took up Antoinette's petition for modification and denied another request for continuance. When her attorney then sought to withdraw the petition, the trial court ruled that the motion for increase was denied. The written order subsequently entered recited that Antoinette's attorney refused to proceed, that the supplemental petition for modification was denied with prejudice, that the original petition was identical to the present one and had been pending since October of 1990, and that Antoinette had failed to undertake necessary discovery.

On August 8, 1991, Antoinette filed a motion to reconsider which the trial court denied by written order on November 21, 1991. This appeal was then perfected.

The first issue is whether the trial court erred in reducing Lyman's obligation to provide term life insurance in the sum of $150,000. Antoinette argues that the provision for life insurance in the original decree was a nonmodifiable division of property which could not be reduced. She relies upon *Lewis v. Lewis* (1970), 120 Ill. App. 2d 263, 256 N.E.2d 660, where a decree of divorce had directed the father to maintain a certain life insurance policy and to name the child as the irrevocable beneficiary. While the child was still a minor, the father sought to modify this provision. His request was denied on the ground that the child had a vested right to the insurance as originally provided. Similarly, in *Reid v. Reid* (1965), 58 Ill. App. 2d 357, 208 N.E.2d 1, a provision for insurance with the children to be irrevocable beneficiaries was held to have been intended to require the father to retain the children as beneficiaries until such time as they had all completed their education, at which time his obligation ended.

■ The case before us does not provide for the naming of irrevocable beneficiaries. Presumably, now that Lyman's obligation to support his oldest son Chris has ended, he could change the beneficiaries of the insurance policy to exclude Chris. As was indicated in *Reid v. Reid*, life insurance benefitting a child is intended to secure that child's support in the event of the death of the insured. Here, the trial court found that the insurance provision in the original judgment order was for the purpose of securing Lyman's support obligation to his three sons. We conclude that such a finding is reasonable. As a part of Lyman's support obligation, the provision was modifiable under section 510(a) (Ill. Rev. Stat. 1991, ch. 40, par. 510(a)), upon a showing of a substantial change of circumstances.

The fact that a child attains the age of majority has been held a substantial change in circumstances. (*In re Marriage of Christiansen* (1980), 89 Ill. App. 3d 167, 411 N.E.2d 519.) Here the key fact is that Lyman's obligation to pay a portion of one son's college expenses has ended and, thus, he no longer has any financial obligation to Chris. This change in circumstances was sufficient to justify the trial court's order providing for a *pro rata* reduction in the life insurance obligation. We conclude that the trial court's order was neither contrary to law nor an abuse of the court's discretion, but rather was permissible under the evidence.

Next, Antoinette contends that the trial court erred in denying her a continuance as to her supplemental petition for modification. She argues that she intended to offer the supplemental petition in the event the trial court ruled in favor of Lyman upon his motion to strike her original petition. The transcript of the proceeding in the trial court does not support this assertion. At the commencement of the June 6 hearing, Antoinette's attorney presented the supplemental petition and stated that he was withdrawing the original petition. A ruling on the motion to strike was never requested by Lyman for the obvious reason that the petition to which it was directed had been withdrawn. The first entry on the circuit court docket for this case on the date of June 6, 1991, is as follows: "All underlying motions are withdrawn."

Antoinette also argues that the supplemental petition contained new allegations in support of her request for an increase in child support payments. She says these new allegations include that Lyman's net income was higher than he stated in his affidavit prior to the 1989 agreed order, that her income has decreased, and that the remaining minor child's needs have increased. When requesting a continuance, Antoinette's attorney asserted the need for time for discovery, particularly to obtain Lyman's 1990 income tax return. In denying any continuance for discovery the trial court indicated that Antoinette had had ample time for discovery since the October 1990 petition was also a request for an increase in support for the youngest son on the ground that Lyman's income had substantially increased. She admits that no request for Lyman's 1990 income tax return had been made prior to the June 6 hearing although the parties had voluntarily furnished financial records upon request in the past.

■ We have examined both the original petition for modification and the supplemental petition. Both seek an increase in child support based upon Antoinette's decrease in income and Lyman's increase in income. The supplemental petition contains no allegations concerning

Lyman's 1990 income but instead asserts that his income was higher than he had revealed before the 1989 agreed order was entered. Thus, the necessity for discovery had not changed during the nine months prior to this hearing.

When a motion for continuance has been denied by the trial court, a reviewing court will not reverse unless the trial court abused its discretion in so ruling. A critical factor is whether the party seeking the continuance acted with diligence in proceeding with the cause. (*Dempsey v. Sternik* (1986), 147 Ill. App. 3d 571, 498 N.E.2d 310.) A factual basis existed here for concluding that Antoinette had not acted with diligence in preparing for the June 6 hearing, and therefore, we hold that the court did not err in denying her motion for continuance.

Antoinette next contends that the trial court erroneously denied her absolute right to a voluntary dismissal of her supplemental petition when the court refused to permit her to withdraw that petition following the denial of her motion for a continuance. She relies upon section 2–1009 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2–1009), which provides:

> "Voluntary dismissal. (a) The plaintiff may at any time before trial or hearing begins, upon notice to each party who has appeared or each such party's attorney, and upon payment of costs, dismiss his or her action or any part thereof as to any defendant, without prejudice, by order filed in the cause."

Lyman argues that once the hearing on all matters set for hearing on June 6 began, it was too late for Antoinette to dismiss her supplemental petition for modification. Clearly, the court agreed to hear each petition separately; therefore, the hearing on the supplemental petition for modification cannot be said to have begun until the court began to consider that petition. A helpful rule was propounded in *In re Marriage of Fine* (1983), 116 Ill. App. 3d 875, 879, 452 N.E.2d 691, where Justice Stamos, speaking for the court, said:

> "[A] 'hearing,' being merely the equitable equivalent of a 'trial' as it is used in section 52(1) [now section 2–1009], does not begin until the parties begin to present their arguments and evidence to the court sitting without a jury in order to achieve an ultimate determination of their rights."

The court went on to hold that proceedings relating to preliminary motions do not amount to commencement of a hearing on the petition. We conclude that the hearing had not begun prior to the motion to withdraw.

■ However, Antoinette's claim of an absolute right to a dismissal before the hearing on her supplemental petition had begun is

conditioned upon proper notice to the opposing party and payment of costs. (*In re Marriage of Manns* (1991), 222 Ill. App. 3d 338, 583 N.E.2d 707.) Antoinette admits that no notice was given here for the reason, she says, that events were moving too rapidly. In other words, her decision to seek a voluntary dismissal was not made until her motion for continuance was denied. Plainly, she failed to comply with the statutory requirements that would entitle her to a voluntary dismissal as a matter of absolute right under section 2—1009(a).

Her final assertion is that, if she was not entitled to a dismissal as a matter of right, the trial court nonetheless abused its discretion in refusing to permit her to withdraw her supplemental petition. She relies upon *Silvestros v. Silvestros* (1985) 132 Ill. App. 3d 537, 478 N.E.2d 17, where the court held that after trial had begun, plaintiff's voluntary dismissal is addressed to the discretion of the trial court and a ruling is reversible only for abuse of that discretion. The court in *Silvestros* also held that an oral motion is insufficient to comply with the statutory requirement that, in such a case, a stipulation be filed with the court signed by the defendant. (Ill. Rev. Stat. 1991, ch. 110, par. 2—1009(b).) Here, too, the requirement of the opposing party's consent was not met.

What is most significant in the case before us is the fact that Antoinette attempted to withdraw her supplemental petition solely for the purpose of circumventing the order of the court that no further continuances would be allowed. The oral motion to withdraw was accompanied by a statement that the petition would be refiled at a later date. This cause had undergone many continuances, and June 6 was the second date set for hearing with an order that no continuances would be allowed. The previous time, Antoinette's attorney had failed to appear and obviously on June 6 was attempting to obtain a further delay. We hold that the trial court did not abuse its discretion by refusing to allow the withdrawal of the supplemental petition. To the contrary, the court is to be commended for its refusal to permit the manipulation of its rules of procedure to prolong litigation needlessly.

The orders entered in this cause in the circuit court of Will County are affirmed.

Affirmed.

STOUDER and GORMAN, JJ., concur.