# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *In re Marriage of McLauchlan*, 2012 IL App (1st) 102114

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF PATRICIA C. McLAUCHLAN, Petitioner-Appellee, and DAVID C. McLAUCHLAN, Respondent-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-10-2114 |
| Filed | March 13, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Although the trial court's finding that the decrease in respondent's income warranted a modification of his maintenance obligation was supported by the record, the determination that his "gross income" included money drawn from his retirement accounts was improper, since the parties had waived any interest in the other's retirement benefits for purposes of maintenance in their settlement agreement, and under those circumstances, respondent's withdrawals from his retirement accounts could not be considered in deciding whether to modify maintenance or change the award and allowing consideration of that factor would violate the parties' original intent and constitute a modification of the settlement agreement; therefore, because the calculation of respondent's arrears was based on income that erroneously included withdrawals from his retirement accounts, the cause was remanded. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 99-D-5397; the Hon. Pamela E. Loza, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded. |

| Counsel on Appeal | Beermann Swerdlove LLP, of Chicago (Howard A. London, of counsel), for appellant. |
|---|---|
| | Swanson, Martin & Bell, LLP, of Chicago (Steven H. Klein and Catherine Basque Weiler, of counsel), for appellee. |
| Panel | JUSTICE HARRIS delivered the judgment of the court, with opinion. Presiding Justice Quinn and Justice Connors concurred in the judgment and opinion. |

## OPINION

¶ 1      Appellant David C. McLauchlan (David) appeals the order of the circuit court modifying his maintenance payments to appellee, Patricia C. McLauchlan (Patricia), pursuant to a marital settlement agreement signed by the parties. On appeal, David contends that (1) the trial court abused its discretion by failing to terminate maintenance given his employment situation; and (2) the trial court erred when it included withdrawals from his retirement accounts as income in calculating maintenance and arrearages. For the following reasons, we affirm in part, reverse in part, and remand for further proceedings.

¶ 2      JURISDICTION

¶ 3      The trial court issued an order on April 14, 2010, but continued the case to address contempt and attorney fees issues. The trial court entered a final order in the instant case on June 14, 2010, and David filed his notice of appeal on July 13, 2010. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rules 301 and 303 governing appeals from final judgments entered below. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. May 30, 2008).

¶ 4      BACKGROUND

¶ 5      The parties had been married more than 30 years when the trial court entered a judgment for dissolution of marriage on July 27, 2001. At the time, they had three children, two of which were over the age of 18. One adult child, Carolyn, is disabled and resides at Misericordia. The marital settlement agreement, which was incorporated into and made part of the judgment for dissolution, provided in part as follows:

     "Commencing January 1, 2001, Husband shall pay to Wife as and for maintenance, formerly known as alimony, the sum of Fourteen Thousand Dollars ($14,000) per month, payable in two installments the 1st and day 15th of each month ('Maintenance'). After

-2-

six years (72 months) from the effective date entry of Judgment for Dissolution of marriage, either party may petition a Court of competent jurisdiction and, subject to the remaining provisions of this paragraph, and annotations set forth below, Husband shall have the right to petition a Court of competent jurisdiction *** to modify Maintenance. The Maintenance will only be modified upon written agreement of the parties, and/or order of Court, and will continue until modified by a Court of competent jurisdiction. Maintenance may only be modified by Husband upon a showing *** of a material and substantial change/reduction in Husband's gross income level. Maintenance may only be modified by Wife upon a showing by Wife of a material and substantial change/increase in Husband's gross income level (after the 72 month period). The parties agree that Wife may earn up to, and including, fifty thousand dollars per year in employment income, in addition to income she may have on her investments, without her income level constituting a change in circumstances which could give rise to a modification of Maintenance."

The marital settlement agreement also included a property settlement in which the parties distributed rights in various retirement accounts and pensions. Patricia received half of David's then-existing retirement assets, which she invested. She also received their vacation home in Key West, Florida, and a portion of the proceeds from the sale of the marital home in Park Ridge, Illinois. Regarding the retirement plans, the settlement agreement provided that "[e]ach party shall execute any and all documents necessary *to waive any and all interests, or partial interest(s) in and to the retirement plan(s) the other party is receiving pursuant to terms of the Agreement*." (Emphasis added.)

¶ 6    On November 26, 2007, David filed a petition to terminate maintenance or, in the alternative, to modify maintenance and for other relief. Patricia filed a petition for rule to show cause and other relief on January 8, 2008, and a motion for summary judgment alleging that David failed to show a substantial reduction in gross income in order to modify maintenance. David filed a response to Patricia's motion and a cross-motion for summary judgment. Hearing on the petitions and motion trial began on December 16, 2009, before Judge Jordan Kaplan. An agreed order for reassignment to a new judge was entered on January 11, 2010, and the case was assigned to Judge Pamela Loza. From the time he filed his petition on November 26, 2007, to the trial court's ruling on April 14, 2010, David paid $14,000 a month in maintenance in 2007, and $31,500 in 2008.

¶ 7    At hearing, David testified that upon his graduation from law school in 1972, he became an associate attorney with the law firm of Lord Bissell & Brook. His law firm income for the five years before the divorce, before any reductions for individual retirement account (IRA), 401(k), and profit sharing or pension payments, averaged $540,318. The average was $504,064 for the three years before the divorce, and David earned $474,388 in 2000, the last full year before the divorce.

¶ 8    After the dissolution of his marriage, his postdivorce income was comparable for the next five years, averaging over $550,000. He remarried and purchased a town house with a balance due of $924,922 on the mortgage. In 2006 David's income dropped dramatically when he earned only $371,746. In 2007, his firm merged with a Texas firm and became Locke, Lord, Bissell & Liddell and David's yearly income dropped to $250,000. These

substantial drops in David's earned income forced him to borrow money from his deceased father's estate and withdraw large amounts from his 401(k) and retirement accounts in order to continue to pay $14,000 per month in maintenance to Patricia and meet his obligations. In 2007 he had a gross income of $361,226, including taxable income of $129,000 resulting from the early withdrawals from his retirement accounts. The 401(k) and retirement account withdrawals had the practical effect of increasing David's taxable income for the year, but in reality they represented the depletion of his retirement savings earned in prior years when maintenance payments were paid to Patricia. His 2008 tax return shows a gross income of $284,848, including taxable withdrawals of $116,477.

¶ 9    At the end of 2008, David was forced to resign from the firm. Nick DiGiovanni, a partner and member of the executive committee at Locke, Lord, Bissell & Liddell, testified that the committee decided to terminate David due to his dwindling business, but the parties negotiated a process whereby David would instead resign at the end of 2008. After his resignation, David began his solo practice, the McLauchlan Law Group LLC. In 2009, David lost approximately $162,000 trying to establish his practice. As of March 23, 2010, David had unbilled fees of approximately $5,000.

¶ 10   In order to meet expenses, David withdrew $695,000 from his Locke Lord pension retirement account and $36,000 from his 401(k) Fidelity account in 2009. As of March 20, 2010, he had withdrawn approximately $75,000 from his Charles Schwab retirement account. At that time, David had approximately $180,000 in his Schwab account and $37,000 in his Fidelity account. David also had about $5,000 to $6,000 in his personal checking account, $5,000 in a nonretirement Schwab account and $3,000 in his law firm account. David's total loan and mortgage debt is over $1.5 million, and he estimated that at the current rate he would exhaust his remaining assets in about three to four months.

¶ 11   At the time David filed his petition, all of the parties' children had reached the age of majority. Carolyn still resides at Misericordia, to which David contributes approximately $3,000 per year. He also pays $200 to $400 per month in expenses for Carolyn.

¶ 12   Patricia testified that although she is a college graduate with a degree in hospitality management, she did not work outside the home during the marriage. In 2010, after searching two years for employment, she secured a part-time job as a cashier/receptionist at $9.50 per hour. She has also taken classes to learn Microsoft Office and accounting. In 2008, after David began making partial maintenance payments, Patricia cut back on her monthly expenses, from $10,000 per month to between $7,500 and $8,000 per month. During this time, she paid for these expenses out of savings, retirement account withdrawals, and a home equity line of credit. Patricia began liquidating her assets and accruing debt. She stated that she has approximately $100,000 in a savings account and $600,000 in a retirement account. Starting in 2009, she has received about $2,000 per month from her investment account. She testified that she no longer lives the lifestyle she was accustomed to during her marriage.

¶ 13   The trial court determined that David had experienced a substantial change in circumstances meriting a modification of maintenance to 20% of his gross income, retroactive to 2008, from all sources. Furthermore, the clear and unambiguous terms of the marital settlement agreement contemplated that money withdrawn from David's retirement

accounts should be included as David's income. The trial court did not terminate maintenance, observing instead that "[r]espondent has no impairment in his present or future earning capacity and he has the ability to earn significantly greater future income than Patricia. Based on David's ability to pay and Patricia's lack of education, job experience, age and ability to earn substantial income ***, the length of the parties' marriage and all other factors in 750 ILCS 5/504 and 5/510 the petitioner's obligation to pay maintenance to the respondent will be modified to be 20% of the petitioner's gross income from all sources."

¶ 14    For 2009, the court found that David had total gross income of $731,340. This income consisted entirely of retirement account withdrawals: $695,000 from his Charles Schwab account and $36,346.03 from his Fidelity account. Although 20% of $731,340 computes to $146,268, the court found that David owed Patricia $168,000 for 2010. The order and the record does not explain this math discrepancy. For 2010, the court found that David "earned" $75,000 for the first three months, an average of $25,000 per month, based upon David's estimate of these withdrawals although these "earnings" consisted entirely of retirement account withdrawals. The court also found David in contempt for failure to pay maintenance, and as a result he was in arrears of $32,469.60 for 2008, $168,000 for 2009, and $15,000 for each month through March 31, 2010. It entered a final order on June 14, 2010, and David filed this timely appeal.

¶ 15                                          ANALYSIS

¶ 16    David first contends that the trial court erred in modifying, rather than terminating, maintenance. The parties entered into a marital settlement agreement that contained provisions for maintenance. The terms of their agreement are binding on the parties and the courts. *Blum v. Koster*, 235 Ill. 2d 21, 32 (2009). It provided that after six years from the entry of judgment for dissolution of marriage, "either party may petition a Court of competent jurisdiction to modify maintenance." It further provided that David may petition to modify maintenance "upon a showing by [David] of a material and substantial change/reduction in [David's] gross income level."

¶ 17    Section 504(a) of the Illinois Marriage and Dissolution of Marriage Act (the Act) (750 ILCS 5/504(a) (West 2006)) lists relevant factors to consider in determining maintenance, including:

"(1) the income and property of each party, including marital property apportioned and non-marital property assigned to the party seeking maintenance;

(2) the needs of each party;

(3) the present and future earning capacity of each party;

(4) any impairment of the present and future earning capacity of the party seeking maintenance due to that party devoting time to domestic duties or having foregone or delayed education, training, employment, or career opportunities due to the marriage;

(5) the time necessary to enable the party seeking maintenance to acquire appropriate education, training, and employment, and whether that party is able to support himself or herself through appropriate employment or is the custodian of a child making it

appropriate that the custodian not seek employment;

(6) the standard of living established during the marriage;

(7) the duration of the marriage;

(8) the age and the physical and emotional condition of both parties;

(9) the tax consequences of the property division upon the respective economic circumstances of the parties;

(10) contributions and services by the party seeking maintenance to the education, training, career or career potential, or license of the other spouse;

(11) any valid agreement of the parties; and

(12) any other factor that the court expressly finds to be just and equitable."

¶ 18 When determining whether to modify a maintenance award, courts consider the following factors in addition to the factors listed in section 504(a) above:

"(1) any change in the employment status of either party and whether the change has been made in good faith;

(2) the efforts, if any, made by the party receiving maintenance to become self-supporting, and the reasonableness of the efforts where they are appropriate;

(3) any impairment of the present and future earning capacity of either party;

(4) the tax consequences of the maintenance payments upon the respective economic circumstances of the parties;

(5) the duration of the maintenance payments previously paid (and remaining to be paid) relative to the length of the marriage;

(6) the property, including retirement benefits, awarded to each party under the judgment of dissolution of marriage, judgment of legal separation, or judgment of declaration of invalidity of marriage and the present status of the property;

(7) the increase or decrease of each party's income since the prior judgment or order from which a review, modification, or termination is being sought;

(8) the property acquired and currently owned by each party after the entry of the judgment of dissolution of marriage, judgment of legal separation, or judgment of declaration of invalidity of marriage; and

(9) any other factor that the court expressly finds to be just and equitable." 750 ILCS 5/510(a-5) (West 2010).

¶ 19 Where the record establishes the basis for a maintenance award, the trial court need not make explicit findings for each of the statutory factors. *Blum*, 235 Ill. 2d at 38. A reviewing court will not disturb the trial court's decision to modify or terminate maintenance absent a clear abuse of discretion. *Blum*, 235 Ill. 2d 21. The trial court abuses its discretion when its "ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." *People v. Hall*, 195 Ill. 2d 1, 20 (2000).

¶ 20 David argues that maintenance payments to Patricia should be terminated due to the change in his employment status and his dwindling retirement accounts. Furthermore, Patricia has the home in Florida, as well as $600,000 in investments and $100,000 in savings

from which to draw income. The trial court took these factors into account, as well as the factors listed in sections 504(a) and 510(a-5). It acknowledged David's change in employment status and found credible Mr. DiGiovanni's testimony that David did not voluntarily quit his job at Locke, Lord, Bissell & Liddell. It also found a substantial decrease in David's earnings. However, the trial court noted that "[r]espondent has not modified his standard of living to accommodate his change in job status" and "has no impairment in his present or future earning capacity and he has the ability to earn significantly greater future income than respondent." Patricia on the other hand, due to the length of the marriage, lacked the education and job experience to earn substantial income. Therefore, the court did not terminate maintenance but instead modified it downward to 20% of David's gross income from all sources. The sources include, but are not limited to, David's interest in his father's revocable trust, retirement accounts, and the McLauchlan Law Group LLC, from January 1, 2009, to date. The trial court considered the relevant factors and the record supports its decision to modify, rather than terminate, maintenance.

¶ 21    David contends, however, that the trial court erred in determining that "gross income" referred to in the marital settlement agreement includes withdrawals from his retirement accounts. The parties' marital settlement agreement contained a provision for the settlement of marital property. Such property included real estate, as well as interests in investments and retirement accounts acquired during the marriage. "[A] property settlement *** which has been approved by the court and incorporated in the judgment of dissolution[ ] becomes merged in the judgment, and the rights of the parties thereafter rest on the judgment." *In re Marriage of Hoffman*, 264 Ill. App. 3d 471, 474 (1994). If the parties decide to settle their property rights by mutual agreement rather than by statute, they are bound to the terms of their agreement. *Chodl v. Chodl*, 37 Ill. App. 3d 52, 53 (1976). A court must construe such an agreement in a manner that gives effect to the parties' intent, and if its terms are unambiguous, the language used is the sole indicator of that intent. *In re Marriage of Sawyer*, 264 Ill. App. 3d 839, 846 (1994). A property settlement agreement approved by the court cannot be set aside or modified absent "proof that the agreement was secured by fraud or coercion or is contrary to any rule of law, public policy, or morals." *Chodl*, 37 Ill. App. 3d at 53. We review the interpretation of a marital settlement agreement *de novo*. *Blum*, 235 Ill. 2d at 33.

¶ 22    This court's precedents set out in *In re Marriage of Munford*, 173 Ill. App. 3d 576 (1988), are instructive here. The parties in *Munford* executed a property settlement agreement, which was incorporated into the dissolution of marriage judgment. Solomon Munford was ordered to pay his ex-wife, Jessye, $300 per month as maintenance. As part of the property settlement, Jessye was awarded financial assets worth $29,500, as well as a " 'Vacation Key Plan' " in Lake Geneva, Wisconsin, and all the furnishings and fixtures contained in the marital home. In turn, Jessye agreed to pay Solomon $3,500 for his interest in their joint property and she "waived '*any and all claims* that she may have in and to Solomon's pension and/or profit sharing plans.' " (Emphasis in original.) *Munford*, 173 Ill. App. 3d at 577.

¶ 23    Solomon subsequently filed a petition to terminate maintenance, and Jessye filed a petition to increase her maintenance due to a substantial change in circumstances. She

claimed that while her health was failing, resulting in increased medical expenses and her inability to work, Solomon's income had increased due to his receipt of retirement benefits. Solomon's gross annual income one year prior to dissolution of marriage was $17,066, and his annual income five years later (one year prior to filing his petition to modify) was $37,544.64, which consisted of about $15,000 in ordinary income and $22,553.28 in retirement benefits. The trial court granted Jessye's petition, finding that Jessye's waiver of any interest in Solomon's retirement benefits was not a waiver of the income generated from those benefits. *Munford*, 173 Ill. App. 3d at 579. It therefore increased Solomon's maintenance obligation to $750 per month for a one-year period. *Munford*, 173 Ill. App. 3d at 578.

¶ 24     This court reversed the trial court, finding that the order to increase maintenance based on Solomon's retirement income "was actually a modification of the parties' property settlement agreement rather than a modification of the maintenance provision of the dissolution judgment based on a substantial change in circumstances." *Munford*, 173 Ill. App. 3d at 579. Furthermore, "[w]hile maintenance provisions are modifiable upon a showing of a substantial change in circumstances, property settlement provisions are not [citations], unless a court finds the existence of conditions that justify the reopening of a judgment." *Munford*, 173 Ill. App. 3d at 579. Reopening a judgment to set aside a property settlement agreement is proper only if the agreement was executed "by some element of fraud, coercion or misrepresentation." *Id.* Jessye did not allege that the settlement agreement was obtained by fraud, coercion or misrepresentation, nor did she contend that the parties intended "to distinguish between waiver of the plans and the income derived therefrom." *Id.* at 580. Therefore, the trial court's determination "improperly rewrote and modified the parties' property settlement agreement" and its findings were against the manifest weight of the evidence. *Id.*

¶ 25     Here, Patricia also agreed in the property settlement agreement "to waive any and all interests, or partial interest(s) in and to the retirement plan(s) the other party is receiving pursuant to terms of the Agreement." Pursuant to *Munford*, the court may not subsequently modify the property settlement agreement by awarding maintenance based upon David's withdrawals from retirement plans in which Patricia had waived any and all interests without a showing that the agreement was accompanied by some element of fraud, coercion or misrepresentation. Patricia does not allege such fraud, coercion or misrepresentation, nor is there any indication in the clear language of the agreement that the parties intended to distinguish between waiver of the plans and waiver of the income derived from those plans. In light of David and Patricia having mutually waived any and all interest in and to the other's retirement plans, the court's finding that the clear and unambiguous terms of the marital settlement agreement contemplated that money withdrawn from David's retirement accounts should be included as income for purposes of setting maintenance is contrary to the terms of the agreement and the parties' expressed intent. Patricia had waived any and all interest or partial interest in David's retirement plans. The trial court's including David's withdrawals from his retirement plans as income in determining maintenance is an improper modification of the parties' property settlement agreement.

¶ 26     Patricia disagrees and argues that this court has held that retirement funds awarded as part

of the marital settlement agreement can be regarded as income. As support, she cites *In re Marriage of Eberhardt*, 387 Ill. App. 3d 226 (2008), *In re Marriage of Lindman*, 356 Ill. App. 3d 462 (2005), and *In re Marriage of Klomps*, 286 Ill. App. 3d 710 (1997). These cases, however, are distinguishable from the case at bar. First, the facts in the cases do not show that the parties waived any and all interest in the other party's retirement benefits in their respective property settlement agreements. Second, the pertinent issue in all three cases was the calculation of child support pursuant to the Act, rather than the determination of maintenance and the interpretation of a mutually agreed-upon waiver provision contained in the settlement agreement. As we stated in *Klomps*, the "primary objective" in the "unfortunate event of a dissolution" is to provide sufficient support for the children. (Internal quotation marks omitted.) *Klomps*, 286 Ill. App. 3d at 714. To that end, section 505(a) of the Act broadly defines net income for child support purposes as "the total of all income from all sources." 750 ILCS 5/505(a)(3) (West 2006). To further protect the interests of the children, the Act also prohibits a settlement agreement from expressly precluding or limiting the modification of "terms concerning the support, custody or visitation of children." 750 ILCS 5/502(f) (West 2006). In that context this court in *Eberhardt*, *Lindman*, and *Klomps* held that for child support purposes, net income includes monies derived from sources originally distributed in a property settlement agreement.

¶ 27     We also note, however, that the Fourth District in *In re Marriage of O'Daniel*, 382 Ill. App. 3d 845, 849 (2008), disagreed with *Lindman*, finding that a former spouse's postdecree withdrawals from self-funded IRAs should not be included as income for child support purposes. *O'Daniel* reasoned that *Lindman* did "not adequately take into account that IRAs are ordinarily self-funded by the individual possessing the retirement account. Except for the tax benefits a person gets from an IRA and the penalties he or she will incur if he or she withdraws the money early, an IRA basically is no different than a savings account ***. The money the individual places in an IRA already belongs to that individual. When an individual withdraws money he placed into an IRA, he does not gain anything as the money was already his." *O'Daniel*, 382 Ill. App. 3d at 850. *O'Daniel*'s observation "that IRA distributions should not be considered income because they are only assets that already belong to the recipient seems difficult to dispute." Reuben A. Bernick, *When Property Becomes Income in Post-Judgment Divorce Litigation*, 98 Ill. B.J. 310, 313 (2010). Like an IRA or savings account, the withdrawal of pension funds is correctly identified as a return of capital and not income.

¶ 28     Most importantly the issue before us concerns maintenance, not child support. The parties' children have all reached majority age and the record indicates that David is providing for the care of Carolyn. Section 502(a) of the Act expressly provides that the parties may enter into a settlement agreement containing provisions for the distribution of property, which is binding on the parties and the courts. See *Blum*, 235 Ill. 2d at 32. Furthermore, the parties may in their settlement agreement expressly waive their interests in the other party's retirement benefits for purposes of maintenance. See *Munford*, 173 Ill. App. 3d at 580. We are not persuaded that the child support cases *Eberhardt*, *Lindman*, *Klomps*, and our recent opinion *In re Marriage of McGrath*, 2011 IL App (1st) 102119, provide support for Patricia's position as regards the maintenance issues here. The child support

cases that hold it proper to include the return of capital withdrawals from retirement benefits as "gross income" are well founded on the court's obligation to protect the best interests of children and public policy determinations that parents financially support their children. Those interests and public policy determinations are not applicable in determining a modification of maintenance. When determining maintenance, withdrawals from a liquidated asset in which the other party had previously waived any future interest do not constitute income.

¶ 29       Therefore, we hold the record supports the trial court's determination to modify David's maintenance obligation. However, the trial court's finding that "gross income" includes monies drawn from David's retirement benefits when modifying maintenance was improper. We hold that absent fraud, coercion or misrepresentation, where the parties have entered into a property settlement agreement wherein each has waived any and all interests in and to the retirement plan(s) of the other party, the parties are bound to the terms of their agreement. Under such circumstances neither Illinois case law nor section 504(a) permits the trial court to consider withdrawals from retirement accounts when deciding whether to modify maintenance and in setting the amount of a new maintenance award. Allowing the trial court to do so violates the parties' original intent when contracting and represents a modification of the parties' property settlement agreement rather than a modification of maintenance provisions of the dissolution judgment based on a substantial change in circumstances.

¶ 30       For the foregoing reasons, the judgment of the circuit court is affirmed in part and reversed in part. As the trial court's calculation of arrears was based on income that erroneously included David's retirement plan withdrawals, we remand the cause for proceedings consistent with this opinion.

¶ 31       Affirmed in part and reversed in part; cause remanded.