*In re* MARRIAGE OF JANE L. WEILER, n/k/a Jane L. Parsons, Petitioner-Appellant and Cross-Appellee, and JAMES R. WEILER, Respondent-Appellee and Cross-Appellant.

Fifth District    No. 5—92—0307

Opinion filed March 2, 1994.

Morris Lane Harvey, of Law Offices of Morris Lane Harvey, of Fairfield, for appellant.

Joe Harrison, of Fairfield, for appellee.

JUSTICE MAAG delivered the opinion of the court:

Petitioner, Jane L. Parsons, appeals from the final judgment of dissolution of marriage entered on April 28, 1992. On appeal, petitioner raises the following issues:

(1) Whether the trial court erred in the valuation of the marital property interest in respondent's profit-sharing plan;

(2) Whether the trial court abused its discretion in the division of the marital assets;

(3) Whether the trial court erred in finding that petitioner's nonmarital estate was not entitled to a $4,000 reimbursement from her individual retirement account by reason of an interspousal gift; and

(4) Whether the trial court erred in finding that respondent had not dissipated marital assets.

Additionally, respondent raises an issue by cross-appeal alleging that the trial court erred when it found that petitioner had not dissipated marital assets.

The parties were married on December 18, 1966, with the marriage being registered in Wayne County, Illinois. An action for dissolution was filed by the petitioner on January 7, 1991. A judgment for dissolution was entered on September 24, 1991. All other issues were reserved. Ultimately, a trial on the remaining issues was held.

Petitioner's employment was terminated on October 21, 1991. This was subsequent to the trial but prior to the court's ruling. The evidence was later reopened, and on November 26, 1991, additional evidence was heard. On March 17, 1992, the trial court entered its memorandum of decision, and on April 28, 1992, the final judgment of dissolution of marriage was entered.

At the time of the judgment of dissolution the petitioner was 44 years of age, with a high school diploma and some college credit. Except for one year early in the marriage, she continuously worked outside the home. Petitioner began working as a secretary at the Wayne County Bank and Trust and after 18 years had worked herself up to the position of loan officer. At the time of the original trial she was earning $36,100 per year. After petitioner's employment was terminated, the trial court provided for maintenance.

At the time of the judgment of dissolution, respondent was 51 years of age with a bachelor's degree in marketing from Southern Illinois University. He had been employed at Southern Wholesale Lumber prior to and during the marriage. At the time of the trial he was a director and general manager of Southern Wholesale Lumber. He had held that position for five years. In addition to his salary, respondent had an automobile furnished for his use. He also earned $100 per month in director fees and received an annual bonus at the end of the fiscal year.

Respondent testified at trial regarding his interest in the "Lumberman's Employee's Trust Plan" (Plan). During the marriage, he contributed 5% of his salary and bonuses to the Plan. Respondent's employer also contributed to the Plan. The employer's accrued period for contribution ended on July 31 of each year, but the employer's contributions were not made until October or November of each

year. The Plan itself operated on a calendar year basis, and the earnings of the Plan could not be determined until after December 31. As of December 31, 1990, respondent's interest in the Plan was $218,277.87.

According to respondent's calculations, his nonmarital interest in the Plan was $13,203.79. He arrived at this result by taking the sum of $1,937.24, which was the amount in the Plan as of December 31, 1966 (the parties were married December 18, 1966), and adding $120.59. This represented the growth for 1967. In applying the earnings for 1967 respondent relied upon article XII, section 12.1, of the Plan, which provides: "The earnings of the fund shall be allocated to the credit of the Parties of the First Part, at December 31st in proportion to their balances at January 1st of that year. For this purpose, any amounts due from the Party of the Second Party (Employer) shall not be included in the employer's account."

The record reflects that subsequent to 1966 respondent took the current-year earnings of the Plan and divided it by the previous year-end balance in the Plan and achieved a rate of return which he multiplied by the alleged nonmarital portion of the Plan to determine the growth of the nonmarital portion of the Plan.

Respondent's mother had died prior to the trial, leaving a large estate to be divided equally between respondent and his brother. Respondent's mother owned certificates of deposit totalling $58,000, as well as other liquid assets and stocks. After the parties separated but prior to the judgment of dissolution, respondent placed $1,275 into his mother's bank account. Also, after the parties separated but prior to the judgment of dissolution, the respondent made two trips. Respondent spent $1,200 on air fare, hotel expenses, and other items on a trip to San Francisco and an additional $500 in journeying to the Indianapolis 500.

Respondent testified that in 1985 he wrote a $2,000 check to petitioner for an individual retirement account (IRA) contribution. In 1986 respondent wrote a $4,000 check for contributions to his and petitioner's separate individual retirement accounts. During cross-examination respondent testified as follows:

"Q. Okay. Now, the I.R.A. accounts *** you funded on a couple of occasions, you remember those checks?

[Respondent] A. Yes.

Q. All right. When you put $2,000.00 in [petitioner's] I.R.A. account, you knew that it was [petitioner's] I.R.A. account and not yours.

A. That's correct.

Q. You knew that you did not have an ownership interest in that account when you deposited the money.

A. That's correct.

Q. You knew when you deposited the money it would be under her sole control and direction.

A. That's correct.

Q. And that she had the authority to withdraw it if she wanted to.

A. That's correct.

Q. To do anything with it that the law would allow.

A. That's correct.

Q. And it was your understanding and intent that when you put that money in there, you were surrendering its control to her.

A. That's correct.

Q. And the same is true of all the contributions you made to that, isn't it.

A. Yes.

Q. You made what, two contributions? $4,000.00?

A. Correct.

Q. So, you knew that you were putting $4,000.00 permanently out of your control and under her control and you did that willingly and with that intent.

A. That's correct.

Q. So, essentially, it was your intent to make a gift to Jane of that $4,000.00.

A. That's correct.

Q. So, as we've used the term in this case, that $4,000.00 becomes non-marital property, doesn't it.

A. No.

Q. It was a gift to her, wasn't it?

A. I said gift. I don't think I meant gift.

Q. Wait a minute, wait a minute. I asked you whether it was your intention to make a gift to her and you said yes. Are you now changing that answer?

A. No, she said I didn't give any gifts, and so I didn't want to—to say anything out of turn, but I'll say it was—yes, I gave her a gift."

On March 17, 1992, the court entered its memorandum of decision and noted that the parties had presented and furnished detailed information on their assets that they had accumulated during their 25-year marriage. The court found that the parties had been in substantial agreement as to the identification of the assets but in substantial disagreement as to how much of the respondent's Plan should have been classified as nonmarital. The court accepted respondent's personal calculations that the current value of respondent's nonmarital share in the plan was $13,219.33. However,

the court agreed with petitioner's arguments that the respondent's calculations did not clearly and fairly allocate earnings of the Plan. The court relied upon article XII, section 12.1, of the Plan and held that respondent had proven by a *preponderance* of the evidence the value of his nonmarital share in the Plan. The court found the marital interest in the Plan to be $205,008.54. Therefore, as of December 31, 1990, the total value of the Plan was calculated to be $218,227.87.

The trial court ruled that the $4,000 contribution of marital funds by respondent to petitioner's IRA account was marital property. The court further held that the presumption of marital property prevails over the presumption of gift when there is a transfer of marital property from one spouse to another.

Addressing the issue of dissipation of marital assets, the court held that "[i]n order to establish dissipation, there must be large sums of money which are spent either for improper uses or for purposes unrelated to the marriage," and that there was "[n]o indication that either party improperly used funds after the irretrievable breakdown of the marriage" on January 4, 1991.

Each party was found to have properly made payments to his or her attorney and to have made expenditures which were necessary for room and board and for ordinary business and recreational expenditures. These were ruled to be consistent with the established pattern developed and practiced during the marriage, even though not all funds were accounted for. The court found that there had been no dissipation of marital funds by either party.

After classifying the assets of the parties as marital or nonmarital, the court turned to the division of the marital assets. It ruled that petitioner's earnings were consistently one-half or less than respondent's for the years 1985 to 1990. Accordingly, it allocated income earned by investments associated with each party's employment.

The nonmarital property of each party, the duration of the marriage, the ages of the parties, their economic circumstances and employment, and their health were all considered. Each party was found to have a reasonable opportunity in the future to acquire assets and income. Petitioner was awarded 54% of the marital assets, and respondent was awarded 46% of the marital assets.

Respondent was awarded his nonmarital assets. These included the sum of $13,219.33 (representing the nonmarital portion of the Plan) and the value of one-half of his mother's estate, or $74,491.90. The petitioner was found to have no nonmarital property.

Lastly, the court found that each party had been billed in excess of $17,000 in legal fees for the work performed in connection with

their dissolution of marriage. Petitioner at the time of trial had paid $12,232.15. This sum was paid during the period of time when petitioner had been employed. At the time of trial, petitioner had an outstanding bill of $5,241.82. The respondent had paid legal fees of $14,561.00 and still owed $2,790. Both parties were found to lack substantial amounts of cash for the payment of legal fees. Most of the cash assets of the parties are in retirement accounts.

The court ruled that the petitioner failed to show that she was unable to pay her attorney fees in view of the size of the marital estate awarded to her, and that she failed to prove that the respondent was better able to pay her attorney fees.

Section 503(b) of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1991, ch. 40, par. 503(b) (now 750 ILCS 5/503(b) (West 1992))) provides that "[f]or purposes of distribution of property pursuant to this Section, all property acquired by either spouse after the marriage and before a judgment of dissolution of marriage or declaration of invalidity of marriage *** is presumed to be marital property." (Ill. Rev. Stat. 1991, ch. 40, par. 503(b) (now 750 ILCS 5/503(b) (West 1992)).) This presumption can only be overcome if the property was acquired by one of the following methods:

"(1) property acquired by gift, legacy, or descent;

(2) property acquired in exchange for property acquired before the marriage or in exchange for property acquired by gift, legacy or descent;

(3) property acquired by a spouse after a judgment of legal separation;

(4) property excluded by valid agreement of the parties;

(5) any judgment or property obtained by judgment awarded to a spouse from the other spouse;

(6) property acquired before the marriage;

(7) the increase in value of property acquired by a method listed in paragraphs (1) through (6) of this subsection." Ill. Rev. Stat. 1991, ch. 40, par. 503(a) (now 750 ILCS 5/503(a) (West 1992)).

In the case before us, petitioner argues that the trial court erred in substantially undervaluing the marital interest in respondent's profit-sharing plan. Specifically, she claims that the court failed to assign any value to marital contributions made during 1991 up until the dissolution of marriage; erred by employing the wrong evidentiary standard with respect to the question of what part of the Plan was nonmarital; and erred in finding that respondent's nonmarital interest in the Plan was $13,203.79. We agree.

■ It is well established in Illinois that assets are to be valued at

the time of the dissolution of marriage (*In re Marriage of Phillips* (1992), 229 Ill. App. 3d 809, 594 N.E.2d 353) and pension rights, whether matured, vested, contributory, or noncontributory, are property under section 503 of the Act. Ill. Rev. Stat. 1991, ch. 40, par. 503 (now 750 ILCS 5/503 (West 1992)); *In re Marriage of Rubinstein* (1986), 145 Ill. App. 3d 31, 38, 495 N.E.2d 659, 664.

■ In the instant case the trial court valued the Plan as of December 31, 1990, nine months prior to the date of the dissolution of marriage, rather than at the time of dissolution. While we are aware that the Plan operates on a calendar year basis and earnings of the Plan are not valued until after December 31 of each year, the record reflects that there was considerable evidence of the funding and workings of the Plan. The interest earned by the Plan for a period of five years prior to the dissolution of marriage was entered into evidence as was respondent's income history for the same period.

We believe that the court erred in failing to place any value on: (1) the contributions respondent made during 1991 up to the dissolution on September 21, 1991; (2) The contributions made by respondent's employer in 1991; and (3) the 1991 earnings of the Plan. These errors will require a rehearing and reevaluation of the value of the Plan as of the date of the dissolution.

■ Petitioner also argues that the trial court erred in classifying $13,203.79 of the Plan as respondent's nonmarital property. Respondent counters that the original $1,937.24 (nonmarital) had grown into $13,203.79, and he asserts that it is nonmarital under section 503(a)(7) of the Act as an increase in value of property acquired prior to the marriage. (Ill. Rev. Stat. 1991, ch. 40, par. 503(a)(7) (now 750 ILCS 5/503(a)(7) (West 1992)).) Petitioner agrees that the $1,937.24 balance in the trust as of December 31, 1966, is nonmarital since it was earned or acquired by the respondent prior to the parties' marriage on December 18, 1966.

The parties agree that if there had been no contributions during the marriage, the Plan with all accruing interest would have remained nonmarital. However, there were significant contributions made to the Plan during the marriage, and the Act creates a presumption that all property acquired during the marriage is marital.

The presumption of marital property can be overcome only by clear, convincing, and unmistakable evidence (*In re Marriage of Landfield* (1991), 209 Ill. App. 3d 678, 567 N.E.2d 1061, *appeal denied* (1991), 139 Ill. 2d 597, 575 N.E.2d 916), and the party claiming that the property is nonmarital has the burden of proof. (*In re Marriage of*

*Madoch* (1991), 212 Ill. App. 3d 1007, 571 N.E.2d 1029.) In other words, in order for respondent to prevail, he must prove by clear, convincing, and unmistakable evidence that any funds in excess of the $1,937.24 are nonmarital. The court employed the wrong evidentiary standard when it held that respondent had proven by a *preponderance* of the evidence that the value of his nonmarital share in the Plan was $13,203.79.

The record reflects that respondent personally performed the calculations, and he testified that he attributed the entire earnings of $120.59 for the year 1967 to his nonmarital interest pursuant to article XII, section 12.1, of the Plan. For each year subsequent to 1967 respondent used the current-year earnings of the Plan and divided it by the previous year-end balance and achieved an alleged rate of return. Respondent then multiplied the rate of return by the nonmarital portion he had calculated for the previous year and achieved the earnings of his alleged nonmarital portion of the Plan.

These calculations are fatally flawed in that respondent failed to attribute any of the earnings in any given year to his contributions made during that year. After December 1966 all contributions that he made were marital.

There is no dispute that the contributions started earning interest when they were made, yet because the Plan uses a year-end distribution of earnings, respondent failed to attribute any of the earnings to his marital contributions during any given year. For the year 1967 respondent claims all of the earnings of $120.59 as nonmarital when clearly part of those earnings were generated by monthly marital contributions to the plan.

Based upon the record before us, respondent has not shown by clear, convincing, and unmistakable evidence that any amount in excess of $1,937.24 is nonmarital.

■ Next, petitioner alleges that the trial court erred in failing to award petitioner a $4,000 reimbursement from her individual retirement account. Petitioner argues that respondent admitted during his trial testimony that the $4,000 sum was a gift to her and, therefore, nonmarital. The trial court ruled that the presumption that marital property remains marital property prevails over the presumption of gift. The trial court further found that the $4,000 payment was made for tax purposes, and the court concluded that the $4,000 was marital.

Because we are dealing with two sets of presumptions, this area of the law is often confusing. In Illinois there exists a presumption of gift where a transfer of property is made from one spouse to another (*Scanlon v. Scanlon* (1955), 6 Ill. 2d 224, 127 N.E.2d 435), yet section

503(b) of the Act imposes a presumption that all property acquired subsequent to the marriage is marital (Ill. Rev. Stat. 1991, ch. 40, par. 503(b) (now 750 ILCS 5/503(b) (West 1992))). Interspousal gifts are possible under section 503(a)(1) of the Act (*In re Marriage of Severns* (1981), 93 Ill. App. 3d 122, 125, 416 N.E.2d 1235, 1237), but the gift must be proven by clear, convincing, and unmistakable evidence to overcome the presumption that all property acquired subsequent to the marriage is marital. *In re Marriage of Severns* (1981), 93 Ill. App. 3d 122, 125, 416 N.E.2d 1235, 1237.

As applied to the facts in the instant case, we believe that the petitioner did sustain her burden.

A gift is a voluntary transfer of property by one person to another where the donor manifests an intent to make such a gift and irrevocably delivers the property to the donor. *In re Marriage of Cook* (1983), 117 Ill. App. 3d 844, 453 N.E.2d 1357.

In the case before us there was no lack of requisite intent to make a gift. The respondent testified at length to his intent and knowledge that the money would go into petitioner's IRA account and would be in her sole control.

> "Q. So you knew that you were putting $4,000 permanently out of your control and under her control and you did that willingly and with that intent?
>
> [Respondent] A. That's correct.
>
> Q. So, essentially, it was your intent to make a gift to Jane of that $4,000?
>
> A. That's correct."

The fact that the respondent made the gift for tax purposes is of no consequence. The motive of the donor is immaterial. (*In re Estate of Moore* (1925), 237 Ill. App. 190.) Intent and motive should not be confused. Motive is what prompts a person to act or fail to act, and intent refers only to the state of mind with which the act is done or omitted. Black's Law Dictionary 727 (5th ed. 1979).

█ Section 503 of the Act provides that certain factors are to be considered by the court when distributing marital property, including:

> "(1) the *** dissipation of each party in the acquisition, preservation, or depreciation or appreciation in value, of the marital and non-marital property." Ill. Rev. Stat. 1991, ch. 40, par. 503(d)(1) (now 750 ILCS 5/503(d)(1) (West 1992)).

Our supreme court has held that dissipation refers to the use of marital property for the sole benefit of one of the spouses for a purpose unrelated to the marriage at a time when the marriage is undergoing an irreconcilable breakdown. (*In re Marriage of O'Neill*

(1990), 138 Ill. 2d 487, 495, 563 N.E.2d 494, 498-99.) The trial court in the case before us found that the marriage was irreconcilably broken as of January 4, 1991, the date that the parties physically separated. This finding is consistent with our previous ruling in *In re Marriage of Hazel* (1991), 219 Ill. App. 3d 920, 579 N.E.2d 1265, that the date of physical separation is the date upon which a marriage becomes irreconcilably broken for purposes of dissipation.

The trial court, in its memorandum of decision of March 17, 1992, ruled that "[i]n order to establish dissipation, there must be large sums of money which are spent either for improper uses or for purposes unrelated to the marriage." It noted that extensive evidence was submitted by the parties in an attempt to establish the use of the funds available to the parties after the irretrievable breakdown of their marriage. The trial court found: "[T]here is no indication that either party improperly used funds after the irretrievable breakdown of the marriage. It appears that neither party can fully account for all the funds available, that each party appears to have made payments to their [*sic*] attorney which are not shown in the summation of expenditures[,] and that those expenditures which were made were necessary for not only room and board[ ] but for ordinary business and recreational expenditures during the period which were consistent with the established pattern developed and practiced during the marriage. Accordingly the court finds that there has been no dissipation of marital funds by either parties [*sic*]."

The law, however, requires that once it has been established that one party has liquidated marital assets, the party charged with dissipation must establish by clear and specific evidence how the funds were spent; general and vague statements that they were spent on marital expenses and bills are inadequate to avoid a finding of dissipation. (*In re Marriage of Jerome* (1994), 255 Ill. App. 3d 374.) Expenditures for attorney fees out of marital assets are a dissipation of marital assets. (*In re Marriage of Toth* (1991), 224 Ill. App. 3d 43, 50, 586 N.E.2d 436, 440.) Both parties expended marital funds for attorneys and other nonmarital purposes, and all the funds cannot be accounted for. The record reflects that both parties dissipated marital funds. Accordingly, we reverse and remand this issue to be reexamined by the trial court.

Since another hearing is necessary to determine the value of the Plan, the division of marital property must be reconsidered. (*In re Marriage of Rapacz* (1985), 135 Ill. App. 3d 1045, 1051, 482 N.E.2d 441.) This being the case, we need not address the remaining issues raised by petitioner concerning the division of the marital assets and

failure to award attorney fees, except to direct the trial court to reexamine these issues.

Reversed and remanded with directions.

CHAPMAN and GOLDENHERSH, JJ., concur.