*In re* MARRIAGE OF ELLEN A. DONOVAN, Petitioner-Appellee, and JERRY R. DONOVAN, Respondent-Appellant.

Fourth District    No. 4—05—0097

Argued September 21, 2005.—Opinion filed November 4, 2005.

MYERSCOUGH, J., specially concurring.
KNECHT, J., specially concurring.

Helen E. Ogar (argued), of Lawrence, Moore, Ogar & Jacobs, of Bloomington, for appellant.

Melissa M. McGrath (argued), of Thomson & Weintraub, of Bloomington, for appellee.

JUSTICE TURNER delivered the opinion of the court:

Petitioner, Ellen A. Donovan, filed a petition for dissolution of marriage in August 2002 from respondent, Jerry R. Donovan. In December 2003, the trial court issued an order as to the distribution of martial assets and debts, maintenance, as well as a judgment for dissolution of marriage.

On appeal, Jerry argues the trial court erred in (1) the amount and duration of maintenance awarded to Ellen, (2) failing to properly

value Ellen's 401k account, (3) choosing different dates in the valuation of assets, and (4) categorizing certain property as marital. We affirm.

## I. BACKGROUND

Ellen and Jerry were married on August 28, 1976. The parties had one son, Thaddeus, born in 1980, and he was emancipated from the marital home at the time of the petition for dissolution. In August 2002, Ellen filed a petition for dissolution of marriage.

In October 2002, the trial court conducted a hearing on Ellen's petition for temporary relief. Following testimony and the admission of exhibits, the court awarded Ellen temporary maintenance of $1,000 per month.

In January 2004, the trial court conducted a hearing on the parties' arguments on the remaining issues. Ellen argued the significant issues were spousal support and division of property. Ellen stated she had a gross income of $37,000 per year and Jerry's yearly income fell within a range of $60,000 to $76,000. Jerry argued Ellen's full-time employment increased her income and he was limited to 60 hours of work per week because of a federal law covering truck drivers. Jerry argued he would not have the opportunity to earn as much as he had in the past.

On December 3, 2004, the trial court entered an order, awarding Ellen $900 per month in maintenance for a term of 60 consecutive months. The court also awarded Ellen and Jerry various items of personal property, bank accounts, and annuities as described in the exhibits. On December 30, 2004, the court issued the judgment for dissolution of marriage. This appeal followed.

## II. ANALYSIS

Initially, we note our review of this appeal is hindered by the lack of a transcript of the evidentiary hearing. At oral argument, appellate counsel indicated the lack of a sufficient number of court reporters available in McLean County for family-law hearings. With our continued hope the State will foster confidence and ensure fairness in our judicial system by providing sufficient court reporters in these important cases, we proceed to the issues presented.

### A. Maintenance

Jerry argues the trial court abused its discretion in awarding $900 per month in maintenance to Ellen for 60 months. We disagree.

■ Section 504(a) of the Illinois Marriage and Dissolution of Marriage Act (Dissolution Act) sets forth 12 factors for the trial court to consider in deciding whether to grant a temporary or permanent maintenance award, including the following:

"(1) the income and property of each party, including marital property apportioned and non[ ]marital property assigned to the party seeking maintenance;

(2) the needs of each party;

(3) the present and future earning capacity of each party;

(4) any impairment of the present and future earning capacity of the party seeking maintenance due to that party devoting time to domestic duties or having forgone or delayed education, training, employment, or career opportunities due to the marriage;

(5) the time necessary to enable the party seeking maintenance to acquire appropriate education, training, and employment, and whether that party is able to support himself or herself through appropriate employment or is the custodian of a child making it appropriate that the custodian not seek employment;

(6) the standard of living established during the marriage;

(7) the duration of the marriage;

(8) the age and the physical and emotional condition of both parties;

(9) the tax consequences of the property division upon the respective economic circumstances of the parties;

(10) contributions and services by the party seeking maintenance to the education, training, career or career potential, or license of the other spouse;

(11) any valid agreement of the parties; and

(12) any other factor that the court expressly finds to be just and equitable." 750 ILCS 5/504(a) (West 2002).

"The trial court has discretion to determine the propriety, amount, and duration of a maintenance award." *In re Marriage of Reynard*, 344 Ill. App. 3d 785, 790, 801 N.E.2d 591, 595 (2003). A trial court's decision as to maintenance will not be reversed on appeal absent an abuse of discretion. *In re Marriage of Culp*, 341 Ill. App. 3d 390, 394, 792 N.E.2d 452, 456 (2003). "Where an abuse of discretion in awarding or denying maintenance is claimed, the burden of showing such an abuse rests with the claiming party." *In re Marriage of Homann*, 276 Ill. App. 3d 236, 240, 658 N.E.2d 492, 495 (1995).

Here, the record contains no report of proceedings or certified bystander's report setting out what occurred on December 18, 2003. At that hearing on the remaining issues, Ellen and Jerry both testified and presented evidence. Dennis Knobloch also testified. Jerry now contends Knobloch presented testimony and documents that caused, in part, the trial court to commit error in calculating the maintenance award.

■ Jerry, as appellant, bears the burden to present a sufficiently complete report of proceedings to support his contentions of error.

*Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92, 459 N.E.2d 958, 959 (1984). When the record on appeal is inadequate, "the reviewing court will presume that the order entered by the trial court was in conformity with the law and had a sufficient factual basis." *Midstate Siding & Window Co. v. Rogers*, 204 Ill. 2d 314, 319, 789 N.E.2d 1248, 1252 (2003); see also *In re Marriage of Newberry*, 346 Ill. App. 3d 526, 531, 805 N.E.2d 640, 644 (2004).

In the case *sub judice*, the trial court awarded Ellen maintenance of $900 per month for 60 months. Ellen contends no abuse of discretion occurred in the court's maintenance award based on the 27-year marriage. Jerry argues the court sought to "equalize" the parties' future resources. However, the record does not support such a contention. In petitioner's exhibit No. 1, Knobloch recommended a maintenance award of $1,250 per month or $1,300 per month. The court, however, only awarded $900 per month.

■ Jerry also complains the trial court failed to consider the current income of the parties or their ability to earn additional income. However, a trial court's determination as to the awarding of maintenance is presumed to be correct. *In re Marriage of Krane*, 288 Ill. App. 3d 608, 618, 681 N.E.2d 609, 616 (1997). In reviewing a matter under the trial court's discretion, "reversal is justified only when it is obvious that the trial court acted arbitrarily or without conscientious judgment." *In re Marriage of Schrimpf*, 293 Ill. App. 3d 246, 252, 687 N.E.2d 171, 175 (1997).

Jerry has not presented a sufficient record to establish the testimony of the parties involved. Further, Jerry's argument in his brief offers nothing to require the conclusion that the trial court acted arbitrarily or without conscientious judgment. The court's order indicated it heard the evidence and had been fully advised. Thus, without more, we find no abuse of discretion.

■ Jerry also argues the trial court abused its discretion in awarding maintenance for 60 consecutive months. Jerry contends that Ellen's educational background, recent increases in income, and potential future income made it reasonable to expect she would be able to support herself within a time frame shorter than 60 months.

In determining the amount and duration of maintenance, "the trial court must balance the ability of the spouse to support himself in some approximation to the standard of living he enjoyed during the marriage." *In re Marriage of Rogers*, 352 Ill. App. 3d 896, 899, 817 N.E.2d 562, 566 (2004). The court's job is essentially to determine whether a party needs maintenance and whether the other party has the ability to pay. *Rogers*, 352 Ill. App. 3d at 899, 817 N.E.2d at 566.

Here, the lack of a transcript regarding testimony as to the award

of maintenance hinders our review of the issue. Jerry in essence asks us to reweigh the statutory factors to his arguments. However, "[m]aintenance issues are presented in a great number of factual situations and resist a simple analysis." *In re Marriage of Mayhall*, 311 Ill. App. 3d 765, 769, 725 N.E.2d 22, 25 (2000). In this case, Jerry has not presented any evidence that would lead us to conclude the trial court abused its discretion.

## B. Marital Property

■ Section 503(d) of the Dissolution Act requires the trial court to divide marital property "in just proportions" considering the enumerated and relevant factors. 750 ILCS 5/503(d) (West 2002). Such factors include, in part, the value of the property assigned to each spouse, the duration of the marriage, the age, health, occupation, sources of income, employability, and needs of each of the parties, and the reasonable opportunity for each spouse for future acquisition of capital assets and future income. 750 ILCS 5/503(d) (West 2002). In dividing marital property, the distribution by the court need not be equal so long as it is equitable. *In re Marriage of Werries*, 247 Ill. App. 3d 639, 649, 616 N.E.2d 1379, 1388 (1993). The division of marital property will not be reversed on appeal absent an abuse of discretion. *In re Marriage of Drury*, 317 Ill. App. 3d 201, 210-11, 740 N.E.2d 365, 371 (2000). In that regard, the court's distribution of assets will only be disturbed on appeal if no reasonable person would agree with the trial court's decision. *In re Marriage of Claydon*, 306 Ill. App. 3d 895, 898, 715 N.E.2d 1201, 1203 (1999).

### 1. *Ellen's 401k Account*

■ Jerry argues the trial court erred in failing to properly value Ellen's 401k account or, in the alternative, failing to divide the 401k through the entry of a qualified domestic relations order (QDRO). We disagree.

Section 503(f) of the Dissolution Act provides that in a proceeding for dissolution of marriage, "the court, in determining the value of the marital and non[ ]marital property for purposes of dividing the property, shall value the property as of the date of trial or some other date as close to the date of trial as is practicable." 750 ILCS 5/503(f) (West 2002). Courts have also found that marital assets must be based on the value as they exist on the date of dissolution. *Claydon*, 306 Ill. App. 3d at 900, 715 N.E.2d at 1204, citing *In re Marriage of Weiler*, 258 Ill. App. 3d 454, 460-61, 629 N.E.2d 1216, 1220 (1994).

In this case, Jerry argued at closing argument that Ellen's 401k account exceeded $13,000 in value. The trial court set the value at $4,863 based on Ellen's exhibit. Jerry did not present any exhibits or

final calculations as to the amount the court should value the 401k account. "It is the obligation of the parties to provide the trial court with sufficient evidence of the value of property." *In re Marriage of Albrecht*, 266 Ill. App. 3d 399, 402, 639 N.E.2d 953, 955 (1994). Further, "a reviewing court will not reverse a trial court where parties have failed to produce evidence of value when there was ample opportunity to do so." *Albrecht*, 266 Ill. App. 3d at 403, 639 N.E.2d at 956. As Jerry failed to present sufficient evidence of the value of Ellen's 401k account, we find no error in the court's ruling.

As to the trial court's alleged failure to divide Ellen's 401k through a QDRO, we also find no error. Jerry's counsel offered a solution whereby the court would enter a QDRO for the 401k. Ellen's counsel responded by stating the court should then place Jerry's Putnam Keogh account and Putnam IRA in a QDRO. The court did not place any of these funds in a QDRO. As Jerry has not established any error, we find the court did not abuse its discretion in doing so.

## 2. *Dates of Valuation*

■ Jerry argues the trial court erred in choosing different dates for the valuation of different assets and in failing to value the assets as close to the date of trial as practicable. Respondent argues various exhibits show debts had been paid and bank accounts had more or less in them at a time near the date of dissolution as opposed to September 2002. However, respondent has not provided a bystander's report or a transcript of the hearing where these exhibits were testified to and admitted into evidence. In essence, respondent seeks to have this court conduct a *de novo* review to determine the value of the property. However, any type of review is hindered by the absence of the transcript. With the inadequate record, we presume the trial court's order conformed with the law and was based on sufficient facts.

## 3. *Classification of Property*

■ Jerry argues the trial court erred in categorizing certain property as marital. Jerry contends Ellen's exhibits show the "small amount of personal property is non[ ]marital property." However, Jerry has not provided a transcript of the testimony pertaining to these issues. Instead, Jerry asks this court to redistribute the property based on his representations as to what certain notes and crossed-off items on various exhibits mean. With no transcript to determine what evidence the trial court considered, we presume the court's classification of property was correct.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

JUSTICE MYERSCOUGH, specially concurring:

I share the sentiments of Justice Knecht's special concurrence. For these reasons, I specially concur.

JUSTICE KNECHT, specially concurring:

I concur with the result but write separately to address the lack of a transcript. Each judge on the courts of review may believe the practices in their home county or circuit are representative of the rest of the state. In fact, courtroom procedures and practices vary from county to county.

McLean County is large, prosperous, and continuing to grow. It has excellent court facilities, a respected trial bar, and an excellent judiciary. What it apparently does not have is a sufficient number of court reporters to provide a record in the contested dissolution of a 26-year marriage involving maintenance, retirement accounts, the valuation of assets, and an expert witness. I do not know if that is a problem in other counties.

At oral argument, we learned the parties arrived for their trial court hearing and discovered no court reporter would be available. At that point, counsel had to make a difficult choice—to seek a continuance until a reporter might be available, to seek a continuance to call a private court reporter, or to proceed to hearing hoping a record would not be necessary. Clients seeking a dissolution do not want further delay, and court settings are a precious commodity. Private court reporters are expensive. Counsel here elected to proceed to hearing.

That choice, which was an exercise in judgment, was practical and does not deserve criticism. The criticism is for a system that expects citizens to use the courtroom to resolve disputes but fails to provide a component essential to the orderly administration of justice—a record. When a system provides a record in some cases but not others, it is making a value judgment that tells some citizens your case is a low priority. It is no surprise a matrimonial case was the subject of this prioritizing.

It is no answer to require litigants to hire their own court reporters. The expense to families already suffering economic upset from a dissolution would have damaging consequences. Private reporters are essential to the preparation of many civil cases, but once in court, the reporter should be official and serve the court and system.

A bystander's report may have been a weak substitute for a record (166 Ill. 2d R. 323(c)), but the retirement of the judge who heard the case made that difficult. In a matrimonial case without a court reporter—for whatever reason—the trial judge has increased responsi-

bility to be as complete as possible in defining the parties' respective gross and net incomes, why certain awards are made, and what dates are being used to set values. Detailed findings in an order would enable us to conduct a better review in this case.

This special concurrence is not a brief for the electronic recording of hearings and trials. I prefer a record prepared by a professional, certified, experienced court reporter who is able to work in partnership with a trial judge to prevent the attorneys from talking over one another, or talking too rapidly, or a witness giving a muffled, unintelligible response. The complete record is best produced by an official court reporter, and a record is the key to meaningful appellate review.